UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
PRODIGY FINANCE CM2021-1 DAC,

                        Petitioner,

           -against-                         **REPORT AND**
                                              **RECOMMENDATION**
JANAK SINGH JASVINDER SINGH          24-CV-6807 (FB) (TAM)
SETHI,

                        Defendant.
------------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

       Petitioner Prodigy Finance CM2021-1 DAC commenced this action against Respondent Janak Singh Jasvinder Singh Sethi on September 26, 2024, seeking to confirm two arbitration awards entered in Petitioner's favor in London and requesting that the Court enter judgment against Respondent on the basis of those awards. (Pet., ECF No. 1.) Petitioner brings the case under the New York Convention, seeking to enforce arbitration awards in the amounts of $51,850.57 and $26,704.35, plus interest, costs, and expenses. (Pet., ECF No. 1, ¶¶ 3, 42, 53; *id.* at p. 10.) The debts Respondent owes Petitioner arise from student loans that Petitioner extended to Respondent in connection with Respondent's post-graduate studies at the University of Southern California Marshall School of Business. (Affirmation in Supp. of Mot. for Default J., ECF No. 14-1, ¶ 7.)

       On January 16, 2025, Petitioner moved for a default judgment against Respondent. (Mot. for Default J., ECF No. 14.) For the reasons set forth below, this Court respectfully recommends that Petitioner's motion for default judgment be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Parties' Contractual Relationship and the London Arbitration Awards

Petitioner Prodigy Finance CM2021-1 DAC ("Petitioner" or "Prodigy") is a company organized under the laws of Ireland, with a principal place of business in Dublin, Ireland. (Pet., ECF No. 1, ¶ 1.) Respondent Janak Singh Jasvinder Singh Sethi ("Respondent" or "Sethi") is an individual who took out two loans from Petitioner's predecessor in interest. (*Id.* ¶¶ 8–11, 18–20.) Respondent signed the first loan agreement on July 15, 2019, pursuant to which Prodigy's predecessor in interest agreed to loan Respondent $44,500 ("Prodigy-Sethi Agreement 1"). (*Id.* ¶ 8.) Respondent signed the second agreement for a loan in the amount of $24,000, on January 30, 2020 ("Prodigy-Sethi Agreement 2"). (*Id.* ¶ 18.) Both loan agreements provided that they would be referred to the Chartered Institute of Arbitrators ("CIArb") in London in the event of a dispute. (*Id.* ¶¶ 17, 24, 25.)

Petitioner further alleges that in December 2022, Respondent first defaulted on both loan agreements. (*Id.* ¶¶ 26, 30.) Subsequent defaults followed. (*Id.* ¶¶ 27–29, 31–33.) Accordingly, Petitioner applied to the CIArb on October 31, 2023, for the appointment of an arbitrator as anticipated in the loan agreements. (*Id.* ¶ 34.) The arbitrator found that Respondent had failed to make the requisite payments on his loans, and, on December 20, 2023, the arbitrator issued final awards in favor of Petitioner, which were sent to all parties. (*Id.* ¶¶ 41–43, 52–54.) As to Prodigy-Sethi Agreement 1, the arbitrator issued an award of $51,850.57, plus simple interest at 12.37% per annum from July 14, 2023, until the date of final payment. (*Id.* ¶ 42.) For Prodigy-Sethi Agreement 2, the arbitrator issued an award of $26,704.35, plus simple interest at 12.37% per annum from July 14, 2023, until the date of final payment. (*Id.*

2

¶ 53.) The arbitrator also ordered Respondent to pay for the arbitration proceedings. (*Id.* ¶¶ 42, 53.)

The agreements underlying the loans at issue here provide for payment of costs, charges, and expenses arising out of any breach of the agreements; they state as follows: "You must pay us for any reasonable costs, charges and expenses that we may incur or have to pay to a third party, including legal costs, that arise out of this breach of the Agreement or its enforcement." (Prodigy-Sethi Agreement 1, ECF No. 1-4, at ECF p. 6; Prodigy-Sethi Agreement 2, ECF No. 1-15, at ECF p. 6.)

## II. Procedural History

As noted above, this case was initiated on September 26, 2024, with the filing of a petition to confirm the London arbitration awards; Petitioner also submitted proposed summons to the Clerk of Court that same day, listing Respondent's address as 137 Decatur St. #3, Brooklyn, NY 11216. (Pet., ECF No. 1; Proposed Summons, ECF No. 4.) Serving the summons in Brooklyn quickly proved unworkable, leading Petitioner to file a motion for alternative service, which was docketed on October 31, 2024. (Mot. for Electronic Service, ECF No. 6.) In that motion, Petitioner indicated that when Respondent applied for the first of the two loans, Respondent provided a physical address in New York, New York, and an email address, janaksethi@outlook.com. (*Id.* at 1.)

Petitioner hired two different process server companies that each attempted to serve Respondent three times at the Brooklyn address listed on the summons, with no success. (*Id.* at 2.) On the final attempt, the resident at the address on the summons informed the process servicer that they did not know Respondent. (*Id.*; Affirmation of Nonservice, ECF No. 6-1 (describing three service attempts at 137 Decatur St., #3,

3

Brooklyn, NY 11216, on October 1, 2024, October 2, 2024, and October 3, 2024); Aff. of Due Diligence, ECF No. 6-2 (detailing three service attempts at 137 Decatur St., #3, on October 9, 2024, October 10, 2024, and October 16, 2024, and indicating that the tenant told the process server on October 16, 2024, that Respondent was unknown).) Also in support of the motion for electronic service, Petitioner included a lengthy record of electronic communications that appear to be between Respondent (identified as Janak Singh Sethi), at email address janaksethi@outlook.com, and Petitioner, concerning Respondent's outstanding student loan payments from on or about and between October 14, 2022, through October 26, 2023. (Communications History, ECF No. 6-3.) In the final communication from Respondent, dated October 26, 2023, Respondent stated that, due to a career downturn and health issues, "there is no way I can repay the loans at this time." (*Id.* at ECF p. 2.)

      In the motion for alternative service, Petitioner sought to serve Respondent by (1) email to the janaksethi@outlook.com address and (2) certified mail at Respondent's last confirmed address in New Jersey. (Proposed Order, ECF No. 6-4.) On November 1, 2024, the Court granted Petitioner's motion for alternative service, permitting service by both proposed methods. (Nov. 1, 2024 ECF Order.) On November 25, 2024, Respondent filed an affidavit of service indicating that service of the summons and complaint by both methods had been effected. (Aff. of Service, ECF No. 7.) On November 26, 2024,

4

the Court issued an order directing Respondent to answer or otherwise respond in this case by December 6, 2024. (Nov. 26, 2024 ECF Order.) No answer or response was filed.[1]

On December 12, 2024, Petitioner filed a request for a certificate of default, which was denied by the Clerk of Court for lack of procedural compliance with E.D.N.Y. Local Rule 55.1, which requires that requests for a certificate of default be accompanied by a certificate of service demonstrating that the default documents have been personally served on or mailed to the last known residence for an individual. (Req. for Certificate of Default, ECF No. 8; Dec. 13, 2024 ECF Order.) On December 13, 2024, Petitioner filed another request for a certificate of default, this time including a certificate of service that indicated the papers had been emailed to janaksethi@outlook.com and mailed to the New Jersey address. (Req. for Certificate of Default, ECF No. 9; Certificate of Service, ECF No. 9-3.) On December 16, 2024, the Clerk of Court entered default against Respondent. (Clerk's Entry of Default, ECF No. 11.) On January 16, 2025, Petitioner moved for a default judgment. (Mot. for Default J., ECF No. 14.) The Honorable Frederic Block referred the motion to the undersigned Magistrate Judge on the same day. (Jan. 16, 2025 ECF Electronic Order.)

On February 28, 2025, the Court issued an order to show cause concerning whether personal jurisdiction and venue were adequately established. (Feb. 28, 2025 ECF Order to Show Cause.) In response, Petitioner submitted a brief, arguing that (1) service to Petitioner via his email and his last known address in New Jersey was

---

[1] The Court's mailing of its November 26, 2024 order to Respondent's purported address in New Jersey was returned to sender on January 15, 2025; the returned mail had been stamped by the postal service with "Return to Sender, Not Deliverable as Addressed, Unable to Forward." (Returned Mail, ECF No. 13 (capitalization modified).)

proper; (2) there is a statutory basis for jurisdiction over Respondent due to his having resided in New York at the time he entered into an ongoing financial relationship with Petitioner and his use of an IP address in Brooklyn when he completed a form in January 2023 seeking forbearance of the loans (the "forbearance assessment"); and (3) in light of Respondent's contacts with New York, exercising jurisdiction over him is consistent with the Due Process Clause. (Response, ECF No. 17.) Petitioner also contends that venue is appropriate under both 28 U.S.C. § 1391(b)(1), because the Respondent lived here, and 28 U.S.C. § 1391(b)(2), which provides that venue is proper in any "'district in which a substantial part of the events or omissions giving rise to the claim occurred,'" because Respondent was living in the District during a period of indebtedness and submitted the forbearance assessment while living here. (*Id.* at 9 (quoting 28 U.S.C. § 1391(b)(2)).)

Notwithstanding the Court's initial concerns about venue and personal jurisdiction identified in the order to show cause, the Court respectfully recommends granting the default petition to confirm the arbitration awards. As discussed herein, Petitioner has established sufficient contacts with the state of New York to establish personal jurisdiction. In addition, the alternate service approved by the Court, which included emailing Respondent the summons and complaint at an email address he used over a long period of time in connection with the underlying loans, was "'reasonably calculated, under the circumstances, to apprise [him] of the pendency of the action,'" and was therefore sufficient. *Bozza v. Love*, No. 15-CV-3271 (LGS), 2015 WL 4039849, at *2 (S.D.N.Y. July 1, 2015) (quoting *SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987)). (*See also* Nov. 1, 2024 ECF Order (approving alternative service "(1) by mailing Plaintiff's Summons to 4905 Park Avenue, Apt 2C, Union City, NJ 070897 in an envelope marked

'personal and confidential'; and (2) by sending Plaintiff's Summons via email at janaksethi@outlook.com," Respondent's known email address).)

## DISCUSSION

### I. Confirmation of an Unopposed Arbitration Award

#### A. Legal Standard

Arbitration awards are not self-enforcing and must "be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Although Petitioner has moved for a default judgment, "[t]he Second Circuit has determined that default judgments on petitions to confirm arbitration awards 'are generally inappropriate.'" *Fid. Brokerage Servs., LLC v. Tortora*, No. 10-CV-1049 (ENV) (VVP), 2010 WL 11623055, at *1 (E.D.N.Y. June 29, 2010) (quoting *Blair*, 462 F.3d at 109). "Instead, courts treat such motions as unopposed motions for summary judgment, and 'may not grant the motion for default without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'"[2] *Id.* (quoting *Blair*, 462 F.3d at 110).

---

[2] Some courts have observed that this distinction "'is somewhat academic,' where . . . the respondent has failed to appear or otherwise defend in both the arbitration proceedings and the subsequent confirmation proceedings." *Loc. 363, United Elec. Workers v. Laser Lite Elec., Inc.*, No. 17-CV-0267 (DLI) (SMG), 2017 WL 9939041, at *2 (E.D.N.Y. Nov. 9, 2017) (quoting *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here! v. Jung Sun Laundry Grp. Corp.*, No. 08-CV-2771 (DLI) (RLM), 2009 WL 704723, at *3 (E.D.N.Y. Mar. 16, 2009)), *report and recommendation adopted*, Mar. 30, 2018 ECF Order Adopting R. & R.; *see id.* ("Indeed, where the respondent appears neither in the arbitration proceedings nor in the subsequent confirmation proceedings, the concerns expressed by the Second Circuit in . . . *Blair* about relying on *ex parte* allegations set forth in a complaint as opposed to a more complete record from the arbitration proceeding appear less pertinent."). Here, Respondent did not appear in the underlying arbitration or these proceedings.

In doing so, "courts generally use the *Blair* standard to defer to an arbitrator's award, and confirm the award so long as the arbitrator provided a barely colorable justification for the outcome reached." *Finkel v. Uptown Commc'ns & Elec., Inc.*, No. 20-CV-3303 (LDH) (CLP), 2022 WL 2467471, at *3 (E.D.N.Y Apr. 12, 2022) (citation and quotation marks omitted) (discussing *Blair*, 462 F.3d 95). "[R]eview of arbitration awards is 'very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993)). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).

Notwithstanding that deference, in the context of an unopposed motion to confirm such an award, the Court must determine whether Petitioner has demonstrated that no material issues of fact are in dispute, because "[e]ven unopposed motions for summary judgment must 'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" *Blair*, 462 F.3d at 110 (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d. 241, 244 (2d Cir. 2004)).

In addition, in this default context, the Court notes that "before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). "A default judgment is void if it is rendered by a court that lacks jurisdiction over the parties." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114,

8

138 (2d Cir. 2011) (quotation marks omitted). In addition, "[t]o establish entitlement to default judgment, the plaintiff must demonstrate proper service of the summons and complaint." *Shenzhen Tepei Tech. Co. Ltd v. TPARTS, LLC*, No. 23-CV-2656 (FB) (TAM), 2024 WL 3184596, at *2 (E.D.N.Y. June 7, 2024) (quotation marks omitted), *report and recommendation adopted*, 2024 WL 3178908 (E.D.N.Y. June 26, 2024).[3]

## B. Discussion

### 1. *Personal Jurisdiction*

"To enforce a foreign arbitral award under the New York Convention, the enforcing court must have *in personam* or *quasi in rem* jurisdiction over the party ordered to pay." *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11-CV-420 (RJH),

---

[3] In addition to reviewing the record and the arbitrator's award, in this default context, the Court also evaluated Petitioner's compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. The Court finds that Petitioner's motion papers substantially comport with these rules, and that Petitioner took steps to serve all of the relevant paperwork on Respondent in the same manner permitted by the Court for service of process. Specifically, Petitioner (1) requested a certificate of default in accordance with Local Rule 55.1(a)(1) (*see* Req. for Certificate of Default, ECF No. 9) and demonstrated that the Clerk of Court entered default (*see* Affirmation in Supp. of Mot. for Default J., ECF No. 14-1, ¶ 5 (citing Clerk's Entry of Default, ECF No. 11)); (2) demonstrated that Respondent has failed to defend the action and that the petition was properly served, in accordance with Local Rule 55.1(a)(2) (*see* Certificate of Service, ECF No. 7; Affirmation in Supp. of Mot. for Default J., ECF No. 14-1, ¶ 4); (3) demonstrated that Respondent is not a minor and was not in the military (*see* Affirmation in Supp. of Mot. for Default J., ECF No. 14-1, ¶ 6; SCRA Report, ECF No. 14-5); and (4) certified the mailing of the request for the certificate of default and the default motion papers to Respondent at his last known address (the New Jersey address that he had confirmed with Prodigy) and email address, in accordance with Local Rules 55.1(a)(4) and 55.2(a)(3) (*see* Certificate of Service, ECF No. 9-3 (certifying service of request for a certificate of default by email and mail); Suppl. Certificate of Service, ECF No. 12 (indicating that mailing to serve the request for certificate of default was returned); Certificate of Service, ECF No. 14-3 (confirming service of default motion paperwork via email and mailing); Suppl. Certificate of Service, ECF No. 15 (indicating that mailing to serve the motion for default judgment was returned)).

2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012).[4] To evaluate personal jurisdiction, courts typically "first 'apply the forum state's long-arm statute,' and then consider 'whether personal jurisdiction comports with due process protections established under the Constitution.'" *ACE Am. Ins. Co. v. Univ. of Ghana*, No. 21-CV-6472 (NRB), 2022 WL 3362193, at *3 (S.D.N.Y. Aug. 15, 2022) (quoting *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)). *See also* N.Y. C.P.L.R. § 302(a)(1) (allowing jurisdiction over nonresident parties who "transact[] any business within the state"); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564–65 (S.D.N.Y. 2000) (discussing personal jurisdiction based on commercial internet activity and observing that knowingly transmitting related files from the forum state typically creates a basis for personal jurisdiction).

Here, the evidentiary record submitted in support of the petition to confirm the arbitration awards shows that Respondent provided a physical address of 24 E. 97th Street, Apt. 6, New York, NY, 10029, when he applied for the first loan, and he began making payments in October 2020, while seemingly still living in New York during 2020, 2021, and 2022. (*See* Prodigy-Sethi Agreement 1, ECF No. 1-4, at ECF p. 2; First Arbitration Award, ECF No. 1-3, ¶ 17.) Respondent then updated his address with the lender by email on May 10, 2022, to 4905 Park Avenue, Apt. 2C, Union City, New Jersey. (*See* First Arbitration Award, ECF No. 1-3, ¶ 3.) In addition, Petitioner has established that Respondent appears to have been living in Brooklyn shortly before the case was initiated, based on Petitioner's findings from efforts to locate him and also

---

[4] As to subject matter jurisdiction, the Court notes that "federal district courts have original jurisdiction over '[a]n action or proceeding falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards].' 9 U.S.C. § 203." *ACE Am. Ins. Co. v. Univ. of Ghana*, No. 21-CV-6472 (NRB), 2022 WL 3362193, at *3 (S.D.N.Y. Aug. 15, 2022) (alterations in original).

based on Respondent's use of an IP address from Brooklyn when submitting the forbearance assessment. (*See* Background Report, ECF No. 17-1 (showing 137 Decatur Street, #3, Brooklyn, NY 11216 as Respondent's address from 8/31/2022 to 7/24/2024); Forbearance Assessment, ECF No. 17-3, at ECF pp. 5–6 (showing that the form was submitted to Prodigy on January 16, 2023, from IP address 70.18.214.227 in Brooklyn, NY).)

Since Respondent incurred the debts underlying the arbitration awards while living in New York, New York, submitted the forbearance assessment from Brooklyn, New York, and appears to have lived in Brooklyn around the time of filing, Petitioner has demonstrated that Respondent conducted some of the business underlying this case in New York and had sufficient contacts with New York so as to establish personal jurisdiction under New York law. The Court also finds that the exercise of personal jurisdiction in these circumstances is consistent with due process. *See, e.g.*, *United States v. Sinyavskiy*, No. 21-CV-2757 (EK) (PK), 2022 WL 3588163, at *3 (E.D.N.Y. July 29, 2022) (noting that courts enjoy general personal jurisdiction over residents of their districts (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016)), *report and recommendation adopted*, 2022 WL 4662789 (E.D.N.Y. Sept. 30, 2022).

2. *Sufficiency of Service of the Summons and Complaint*

As detailed above, given the difficulty in serving Respondent, Petitioner moved for alternative service so as to serve Respondent via email to the janaksethi@outlook.com address and by certified mail at his last confirmed address in New Jersey. (Mot. for Electronic Service, ECF No. 6.) The Court expressly found in granting the motion that the proposed manner of service was reasonably calculated to reach Respondent as required by New York and federal law. (Nov. 1, 2024 ECF Order.)

11

Respondent filed a certificate of service confirming that both of these approved methods had been effected. (Certificate of Service, ECF No. 7.) The Court finds that service of the summons and complaint was sufficient. *See* N.Y. C.P.L.R. § 308(5) (providing that service is proper when effected "in such manner as the court, upon motion without notice, directs, if service is impracticable" by the other means prescribed by New York law).[5]

    3. *Confirmation of the London Arbitration Awards*

        a. <u>The New York Convention</u>

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, otherwise known as the "New York Convention," governs judicial confirmation of foreign arbitration awards. *See* 9 U.S.C. §§ 201–208; *see also Agility Pub. Warehousing Co. K.S.C., Pro. Cont. Adm'rs v. Supreme Foodservice GMBH*, 495 F. App'x 149, 151 (2d Cir. 2012) (summary order). Under 9 U.S.C. § 207, a party may seek to confirm a foreign arbitral award under the New York Convention if the award (1) falls under the Convention; (2) was issued within the past three years; and (3) does not fall under a relevant exception. 9 U.S.C. § 207.

Article V of the New York Convention sets forth seven explicit grounds for refusal of a foreign arbitration award. *See* New York Convention, art. V(1)–(2). These

---

[5] Given that most of the events underlying this case occurred outside of this district, the Court does still question whether venue is proper. However, "the Court need not conduct a *sua sponte* venue analysis because a non-appearing defendant waives its right to challenge venue by failing to appear." *K2M Design, Inc. v. Schmidt*, No. 22-CV-3069 (MKV) (GS), 2023 WL 10674525, at *5 n.6 (S.D.N.Y. Nov. 30, 2023), *report and recommendation adopted*, 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024); *see also Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."). Since Respondent was properly served and has nevertheless failed to appear, the Court declines to reach venue here.

are: (1) incapacity of the parties; (2) improper notice or inability for the respondent to present a case; (3) the award does not comply with terms of the submission to arbitration or is otherwise beyond the scope of proceedings; (4) the composition of the arbitral authority was not in accordance with the parties or host country; (5) the "award has not yet become binding on the parties, or has been set aside" by another authority; (6) the subject matter of the dispute "is not capable of settlement by arbitration" under the relevant law; and (7) "enforcement of the award would be contrary to public policy." *Id.*; *see also Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19; *Olin Holdings Ltd. v. State of Libya*, No. 21-CV-4150 (JGK), 2022 WL 864507, at *5–6 (S.D.N.Y. Mar. 23, 2022).

Under the New York Convention, the Court's role "in reviewing a foreign arbitral award is strictly limited" and "extremely deferential." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19; *Korean Trade Ins. Corp. v. Eat It Corp.*, No. 14-CV-3456 (MKB) (RLM), 2015 WL 1247053, at *4 (E.D.N.Y. Mar. 16, 2015); *see also Karen Mar. Ltd. v. Omar Int'l., Inc.*, 322 F. Supp. 2d 224, 225 (E.D.N.Y 2004). Accordingly, when presented with a default judgment motion to confirm a foreign arbitration award, courts are tasked with providing a summary proceeding "'that merely makes what is already a final arbitration award a judgment of the court.'" *Korean Trade Ins. Corp.*, 2015 WL 1247053, at *4 (quoting *D.H. Blair & Co.*, 462 F.3d at 110). Courts must look to see "'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir. 1972)). As noted above, "[o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Loc. 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992)).

13

b. Discussion

The petition here alleges that Respondent entered into two loan agreements with Petitioner's predecessor in interest and that, in light of Respondent's failure to pay the loans in accordance with the loans' terms, Petitioner secured two arbitration awards as anticipated by the loan agreements. Based on these arbitration awards, the current petition seeks entry of judgment against Respondent in the amounts of $51,850.57 for the award on the first loan and $26,704.35 for the award on the second loan, for a total of $78,554.92, plus simple interest at 12.37% per annum from July 14, 2023, until the date of final payment, in addition to $7,720.06 for arbitration expenses ($3,860.03 per arbitration[6]), plus interest at 12.37% per annum on the arbitration expense amount from December 20, 2023, until the date of payment. (Pet., ECF No. 1, at 10–11.)

---

[6] The Court notes that the arbitrator awarded the fees and costs of the arbitration in pounds (£), at the amount of £3049.59 GBP for each arbitration proceeding. (Pet., ECF No. 1, at 10 n.2.) The custom in U.S. courts is to convert any arbitration award issued in foreign currency to U.S. dollars. *See Yukos Cap. S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8, 12 (2d Cir. 2014) (summary order); *Shaw, Savill, Albion & Co. v. The Fredericksburg*, 189 F.2d 952, 954 (2d Cir. 1951); *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 78 F. Supp. 3d 556, 557 (E.D.N.Y. 2015). However, when converting foreign currency awards into U.S. judgments, courts in this circuit take different approaches to determine the date on which to calculate the exchange rate. *See, e.g., Rienzi & Sons, Inc. v. Puglisi*, 638 F. App'x 87, 92 (2d Cir. 2016) (summary order) ("When a court converts a foreign obligation into American currency, it must determine 'the proper date for conversion of the foreign currency into our own.'" (quoting *Shaw, Savill, Albion & Co.*, 189 F.2d at 955)). For example, when sitting in diversity, courts generally apply New York Judiciary Law § 27(b), which uses "the rate of exchange prevailing on the date of entry of the judgment or decree," otherwise known as the "judgment-day rule." N.Y. Judiciary Law § 27(b); *see also Rienzi & Sons, Inc.*, 638 F. App'x at 92–93; *Ladas Foods S.A. v. Castella Imps., Inc.*, No. 20-CV-570 (JMA) (AYS), 2021 WL 619742, at *1 n.1 (E.D.N.Y. Jan. 5, 2021); *Wells Fargo Tr. Co., N.A. v. Synergy Grp. Corp.*, 465 F. Supp. 3d 355, 369 n.10 (S.D.N.Y. 2020). Petitioner calculated the conversion using the judgment-day rule, and alleges that the exchange rate in effect on December 20, 2023, the date the awards became final, was 1.266. "Accordingly, £3049.59 GBP is replaced in this petition with $3,860.03 USD." (Pet., ECF No. 1, at 10 n.2 (citing Foreign Exchange Rates, Federal Reserve, *available at* https://www.federalreserve.gov/releases/h10/20231226/).) Petitioner is correct that the Federal Reserve reported the conversion rate as 1.266 on December 20, 2023, but by the Court's calculation, that would result in a U.S. dollar equivalent of $3,860.78. (*See* Arbitration

In addition to the petition, Petitioner filed numerous documents in support, including the original loan agreements, various notices provided to Respondent, Petitioner's requests to CIArb for the appointment of an arbitrator, and the arbitration awards. (*See* Pet., Exs. 1 & 12, ECF Nos. 1-3 & 1-14 (arbitration awards); *Id.*, Exs. 2 & 13, ECF Nos. 1-4 & 1-15 (loan agreements); *Id.*, Exs. 11 & 20, ECF Nos. 1-13 & 1-22 (CIArb applications); *see generally id.*, Exs. 5–12 & 15–19, ECF Nos. 1-7 – 1-14 & 1-17 – 1-21 (notices to Respondent).) Petitioner has also submitted documentation illustrating the assignment of the loans to Petitioner from Petitioner's predecessors in interest. (*See id.*, Exs. 3, 4 & 14, ECF Nos. 1-5, 1-6 & 1-16.) Having reviewed all of these documents, the Court finds Petitioner has adequately shown that "'a ground for the arbitrator's decision can be inferred from the facts of the case.'" *Barbier*, 948 F.2d at 121 (quoting *Sobel*, 469 F.2d at 1216). Specifically, the record makes plain that the arbitrator reviewed the underlying loan agreements, the full transaction histories of the loans, and the email correspondence with Respondent where he indicated that he was unable to repay the loans, and the arbitrator calculated the amount due and owing plus interest. (*See* Arbitration Awards, ECF Nos. 1-3 & 1-14; *see also* Notices of Sums in Arrears, ECF Nos. 1-10 (regarding Prodigy-Sethi Agreement 1), 1-19 (regarding Prodigy-Sethi Agreement

---

Awards, ECF Nos. 1-3, ¶¶ 57(f)–(g) (awarding £3049.59 GBP in legal fees and costs as to the first loan plus simple interest at the rate of 12.37% per annum from the date of the award until payment), 1-14, ¶¶ 57(f)–(g) (awarding same amount as to the second loan).) *See, e.g.*, *Qing Yang Seafood Imp. (Shanghai) Co. v. JZ Swimming Pigs, Inc.*, No. 21-CV-3587 (RPK) (TAM), 2022 WL 2467540, at *5 (E.D.N.Y. Apr. 15, 2022) (applying judgment-day rule to convert the judgment amount when confirming a foreign arbitral award in a default posture), *report and recommendation adopted*, May 10, 2022 ECF Order Adopting R. & R. Accordingly, the Court's independent analysis supports awarding Petitioner the arbitration expenses it seeks, i.e., $3,860.03 per arbitration. (Pet., ECF No. 1, at 10.)

2).) Having reviewed the evidentiary record, there is no material fact in dispute that would preclude confirmation of the arbitration awards. In addition, the record shows that the arbitration awards here (1) appear to fall under the Convention; (2) were issued within the past three years; and (3) do not fall under a relevant exception. 9 U.S.C. § 207. Accordingly, the Court respectfully recommends that the petition be granted and that the arbitration awards be confirmed.

## II. Post-Judgment Interest

Petitioner also seeks an award of post-judgment interest at the statutory rate. (Statement of Damages, ECF No. 14-2, ¶ 6.) Post-judgment interest is mandatory and governed by federal statute. *See* 28 U.S.C. § 1961(a). *See also Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004) (observing that the award of post-judgment interest is "mandatory"); *see, e.g.*, *AKF Inc. v. Skybell Techs. Inc.*, 772 F. Supp. 3d 473, 486 (S.D.N.Y. 2025) (awarding post-judgment interest at the statutory rate in the context of confirming foreign arbitration award). Therefore, the Court recommends awarding Petitioner post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961(a), calculated from the date the Clerk of Court enters final judgment until the date of payment.

## III. Attorneys' Fees and Costs

Petitioner also seeks attorneys' fees. "When a party fails to abide by an arbitrator's decision 'without justification,' attorney's fees and costs may be awarded." *New York City & Vicinity Dist. Council of Carpenters v. LILCO Constr. Corp.*, No. 18-CV-2695 (RRM) (CLP), 2020 WL 8084267, at *6 (E.D.N.Y. July 21, 2020), *report and recommendation adopted*, 2021 WL 103264 (E.D.N.Y. Jan. 11, 2021); *see also Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 819–20 (2d Cir. 2022).

In addition, here, as set forth above, the loan agreements between the parties expressly anticipate that attorneys' fees and costs may be awarded. Petitioner's attorneys seek $7,405 in fees and costs for their work to enforce the First Arbitration Award, in addition to $7,326 in attorneys' fees and costs to enforce the Second Arbitration Award, for a total award of fees and costs in the amount of $14,731. (Statement of Damages, ECF No. 14-2, ¶ 5.) The invoices underlying this fee request indicate that counsel has agreed with Petitioner to a flat rate of $7,000 per arbitration award and posits that the requested fees "are reasonable and commensurate with the rates charged in our area with similar experience." (*Id.*; *see* Invoices, ECF No. 14-6 (indicating an agreed-upon flat fee of $7,000).)

Courts have broad discretion in calculating a reasonable attorneys' fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008); *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). In this Circuit, the determination of a reasonable fee is based on a number of factors, such as the labor and skill required of the attorney, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation, and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. Courts must also consider what a reasonable, paying client would be willing to pay, "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. In addition, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009).

17

To calculate attorneys' fees, courts typically start by calculating the lodestar amount, which involves multiplying a reasonable number of hours worked, supported by contemporary billing records, by a "reasonable hourly rate," based on fee awards for similar cases in the district. *Drywall Tapers & Pointers of Greater New York Loc. Union 1974, IUPAT, AFL-CIO v. Drywall & Acoustics of N.E., Inc.*, No. 18-CV-11986 (JGK), 2019 WL 6883897, at *3 (S.D.N.Y. Nov. 27, 2019) (citing *McDonald v. Pension Plan of the NYSA–ILA Pension Tr. Fund*, 450 F. 3d 91, 96 (2d Cir. 2006)); *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010); *see also Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 127–28 (E.D.N.Y. 2013). The resulting rate is presumptively reasonable. *Millea*, 658 F.3d at 166. The forum rates in the Eastern District of New York are now "$450–$650 for partners, $300–$450 for senior associates, $150–$300 for junior associates, and $100–$150 for paralegals." *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025).

As set forth above, counsel request $14,000 in fees alone, at the rate of $7,000 per arbitration, based on an agreement with Petitioner. (Billing Decl., ECF No. 18, ¶¶ 2, 8.) Contemporaneous billing records amply support this request. As to the number of hours expended to enforce the First Arbitration Award, billing records show 6.8 hours expended by Partner Lawrence H. Cooke II ("Cooke"), 12.2 hours expended by senior associate Alissa N. Portner ("Portner"), and 1.7 hours by Partner Jason C. Rose ("Rose"), for a total of 20.7 hours. (Billing Records, ECF No. 18-1, at ECF p. 5; Billing Decl., ECF No. 18, ¶¶ 4–6.) For the Second Arbitration Award enforcement work, billing records show 0.8 hours expended by Cooke, 12.4 hours expended by Portner, and 0.7 hours by Rose, for a total of 13.9 hours. (Billing Records, ECF No. 18-1, at ECF p. 9.) While counsel redacted their standard hourly rate, the Court notes that each attorney is either a partner or a senior associate with significant experience at an international law firm,

18

and that the work for which Petitioner seeks attorneys' fees involved enforcement of international arbitration awards. (*Id.* at ECF pp. 5, 9; Billing Decl., ECF No. 18, ¶¶ 4–7.) Even assuming rates of $400 per hour for Portner and $600 per hour for each partner, which are undoubtedly less than these attorneys' actual billing rates given their respective experience and the law firm at which they work, the Court finds that a reasonable lodestar would equal $15,840 ($400 x 24.6 associate hours + $600 x 10 partner hours). Accordingly, the Court finds that the requested fee amount of $14,000 is reasonable and supported; the Court thus recommends granting the attorneys' fee request in full.

In addition, the Court has reviewed the costs and receipts submitted in support and finds that $731 in costs, which include the $405 filing fee for the initiation of this case and $326 for service of a subpoena, is likewise reasonable and supported. (*See* Invoices, ECF No. 14-6.)

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Petitioner's motion for default judgment be granted, that the arbitration awards be confirmed, that judgment against Respondent be entered, and that Petitioner be awarded:

(1) a money judgment in the amount of $78,554.92, comprising an award of $51,850.57 for the First Arbitration Award and $26,704.35 for the Second Arbitration Award;

(2) simple interest on the award of $78,554.92, at 12.37% per annum from July 14, 2023, until the date of final payment (at the rate of $26.62 per day ($78,554.92 x .1237 / 365));

(3) $7,720.06 for arbitration expenses, comprising $3,860.03 per arbitration;

(4) simple interest on the arbitration expense award of $7,720.06, at 12.37% per annum from December 20, 2023, until the date of final payment (at the rate of $2.62 per day ($7,720.06 x .1237 / 365));

(5) attorneys' fees and costs in the amount of $14,731; and

(6) post-judgment interest at the rate prescribed by 28 U.S.C. § 1961, accruing from the date final judgment is entered until payment is made.

\* \* \* \* \*

This report and recommendation will be filed electronically. As a courtesy, the Court respectfully directs Petitioner to provide a copy of this report and recommendation to Respondent forthwith and to file proof of same by August 20, 2025. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Frederic Block at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
       August 15, 2025

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE